PEOPLE v JACQUELINE WALKER

CITY OF WARREN v WALKER

Docket No. 61924. Submitted October 14, 1982, at Detroit.—Decided
    June 18, 1984.

The City of Warren enacted legislation prohibiting a youth under
    the age of 17 from any public association or involvement with
    electronic video games without his parent or guardian being
    present. Defendant, Jacqueline Walker, the owner of Walker's
    Pinball Arcade, thereafter was issued a citation for "allowing a
    minor to operate mechanical machines" in violation of the
    city's ordinance. Following a bench trial in district court,
    defendant was found guilty and assessed a fine and costs of
    $500. Defendant appealed to the Macomb Circuit Court which
    affirmed, John G. Roskopp, J. The Court of Appeals thereafter
    denied leave to appeal. Defendant sought leave to appeal to the
    Supreme Court, which remanded the case to the Court of
    Appeals for consideration as on leave granted. 412 Mich 888
    (1981). Defendant challenges the validity of the ordinance
    alleging that: it restricts the exercise of fundamental First
    Amendment rights of expression and association; it violates
    federal and state constitutional guarantees of equal protection;
    and it violates the prohibition against age discrimination con-
    tained in the Elliott-Larsen Civil Rights Act. *Held:*

    1. Defendant has standing to raise the issue of the infringe-
ment of the First Amendment rights of potential customers.
The case or controversy requirement of US Const, art III is
satisfied since the ordinance directly applies to defendant.

    2. The right to associate is protected when the expressive
conduct around which the association is centered is accorded
protection by the First Amendment. Defendant has not demon-
strated that the communicative elements of playing video

REFERENCES FOR POINTS IN HEADNOTES
[1-5] 4 Am Jur 2d, Amusements and Exhibitions § 12 *et seq.*
    16A Am Jur 2d, Constitutional Law §§ 533, 535.
[5, 6] 16A Am Jur 2d, Constitutional Law § 770.
[7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 126.

games are entitled to constitutional protection and the Court of Appeals is not prepared, on the facts presented, to so hold. Therefore, the ordinance is not violative of the First Amendment.

3. Although entertainment may be entitled to First Amendment protection, in order to gain protected status that entertainment must be designed to communicate or express some idea or some information. It appears that any communication or expression of ideas that occurs during the playing of a video game is purely inconsequential.

4. A classification based on age, mechanical amusements, or amusement machine centers is not a suspect classification for equal protection purposes.

5. Defendant did not sustain her burden of showing that the ordinance is without any reasonable justification. The classifications in the ordinance are not essentially arbitrary. The current popularity of amusement arcades, particularly among young people, has clearly created problems unique to such businesses which the city has attempted to minimize by the implementation of the ordinance.

6. The argument that the ordinance violates the prohibition against age discrimination in the Elliott-Larsen Civil Rights Act is without merit.

7. The city had both the constitutional and statutory authority to enact the ordinance.

Affirmed.

1. CONSTITUTIONAL LAW — ACTIONS — PARTIES.

The owner of an electronic video game center has standing to raise the issue of the infringement of the First Amendment rights of his potential customers resulting from a municipal ordinance restricting persons under the age of 17 from coming to an electronic video game center unless accompanied by a parent or guardian where the ordinance directly applies to such owner (US Const, art III).

2. CONSTITUTIONAL LAW — RIGHT OF ASSOCIATION — GROUP ASSOCIATIONS.

The right of association as a protected constitutional right is recognized in connection with group associations; however, it has never been held to apply to the right of an individual to associate for purposes purely social in character.

3. CONSTITUTIONAL LAW — RIGHT OF ASSOCIATION — GROUP ASSOCIATIONS.

The right to associate for purposes of expression is protected by

the constitution when the expressive conduct around which the association is centered is accorded protection by the First Amendment; thus, a group assembling for purposes constitutionally protected under the freedom of expression guarantee may not be interfered with or discouraged in its pursuits without a showing of a compelling interest by the government to interfere or discourage the association (US Const, Am I).

4. CONSTITUTIONAL LAW — RIGHT OF ASSOCIATION — ENTERTAINMENT — VIDEO GAMES.

Entertainment may be entitled to First Amendment protections, however, to gain protected status, that entertainment must be designed to communicate or express some idea or some information; any communication or expression of ideas that occurs during the playing of electronic video games is purely inconsequential, therefore, a municipal ordinance which restricts association for the purpose of playing such games is not violative of the First Amendment (US Const, Am I).

5. EQUAL PROTECTION — SUSPECT CLASSIFICATIONS — AGE — MECHANICAL AMUSEMENTS — AMUSEMENT MACHINES.

Neither age, mechanical amusements nor amusement machine centers are suspect classifications for equal protection purposes, therefore, a statutory discrimination based thereon will not be set aside on equal protection grounds if any state of facts reasonably may be conceived to justify it and the classification will stand unless it is shown to be essentially arbitrary; the burden is on the person challenging the classification to show that it is without reasonable justification (US Const, Am XIV; Const 1963, art 1, § 2).

6. CIVIL RIGHTS — DISCRIMINATION — AGE — PUBLIC ACCOMMODATIONS — ORDINANCES.

The Elliott-Larsen Civil Rights Act prohibits age-based discrimination in places of public accommodation except where permitted by law; the term law includes the entire body of law including validly passed municipal ordinances (MCL 37.2302; MSA 3.548[302]).

7. MUNICIPAL CORPORATIONS — HOME RULE CITIES — ORDINANCES — VIDEO GAMES — CONSTITUTIONAL LAW.

A home-rule city has both the constitutional and statutory authority to enact an ordinance restricting a person under the age of 17 from any public association or involvement with electronic video games without his parent or guardian being present (Const 1963, art 7, § 22; MCL 117.4i; MSA 5.2082).

*David Griem,* City Attorney, and *John J. Murray,* Chief Assistant City Attorney, for plaintiff.

*Kenneth A. Webb,* for defendant on appeal.

Before: T. M. Burns, P.J., and V. J. Brennan and Wahls, JJ.

Wahls, J. This case presents the question of whether a municipality may lawfully prohibit its youths from engaging in the now popular pastime of playing electronic video games. We find the matter to be somewhat novel and of no small constitutional importance. The factual background is comparatively straightforward.

The City of Warren, a home-rule city, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.;* enacted an ordinance which under the general licensing rubric prohibited a youth under the age of 17 from any public association or involvement with electronic video games without his parent or guardian being present:[1]

*"Prohibitions and restrictions.*—(1) It shall be unlawful for any licensee, employee, agent or servant of the licensee to permit a minor prior to his (her) 17th birthday to enter, loiter, remain, congregate, or play any mechanical amusement in an amusement machine center unless accompanied by a parent or guardian.

[1] The penalty provisions for violation of the ordinance are set forth below:

"Sec. 3-515 *Penalty.*—Any person who shall violate any of the provisions of this chapter shall be penalized in accordance with Sections 1-110 and 1-111 of the Warren Code of Ordinances."

"Sec. 1-110 *General penalty.*—Whenever in this code or any ordinance of the city any act is prohibited or is made or declared to be unlawful or an offense, or whenever in this code or such ordinance the doing of any act is required or the failure to do any act is declared to be unlawful, the violation of any such provision by any person shall, upon conviction, be punished by a fine not exceeding $500.00 or imprisonment for a term not exceeding 90 days, or both, except whenever a specific penalty is otherwise provided."

"(2) Nothing herein contained shall be construed as permitting the issuance of a license for any slot machine or as legalizing any coin-operated machine or device in which is incorporated any gambling feature, and all use thereof for gambling of any kind is prohibited.

"(3) It is unlawful for any person holding a licensee under this chapter to permit the operation of a device, as defined in Section 3-501, between the hours of 2:00 a.m. and 6:00 a.m. of any day.

"(4) Nothing in this chapter shall be construed as prohibiting the keeping and use of pool tables, billiard tables, bowling alleys, shuffleboards, or other licensed amusements and their usual appurtenances in places duly licensed and operated under applicable ordinances of the city." Warren City Ordinance 30, § 3-505.

Defendant, Jacqueline Walker, the owner of Walker's Pinball Arcade, catered to youths within the City of Warren. On January 18, 1979, two police officers observed several individuals in defendant's arcade who appeared to be minors. Upon entering and questioning the youths, the officers ascertained that at least six youths were under 17 and were not accompanied by a parent or guardian. The officers issued defendant a citation charging her with "allowing a minor to operate mechanical machines". Following a bench trial in district court, defendant was found guilty of violating the ordinance and assessed a fine and costs in the amount of $500. On appeal, the circuit court affirmed. Thereafter, defendant sought leave to appeal to this Court, which was denied in an order dated April 9, 1981. However, defendant then sought leave to appeal to the Supreme Court, which remanded the case to this Court for consideration as on leave granted. 412 Mich 888 (1981).

Defendant challenges the validity of the ordinance on the following grounds:

1. The ordinance restricts the exercise of fundamental First Amendment rights of expression and association;

2. The ordinance violates federal and state constitutional guarantees of equal protection; and

3. The ordinance violates the prohibition against age discrimination in the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

I

Defendant asserts that the ordinance restricts, without compelling reason, the right of persons under the age of 17 to associate by prohibiting them from coming to the game center unless accompanied by an adult. Defendant has standing to raise the issue of the infringement of the First Amendment rights of potential customers. See *e.g., Carey v Population Services International,* 431 US 678; 97 S Ct 2010; 52 L Ed 2d 675 (1977). The case or controversy requirement of Article III of the United States Constitution is satisfied since the ordinance directly applies to defendant. Defendant is "obliged either to heed the statutory prohibition, thereby incurring a direct economic injury through the constriction of [her] market, or to disobey the statutory command and suffer legal sanctions". *Carey v Population Services International, supra,* p 683.

Were this Court to hold that playing pinball or video games is a fundamental right, it is clear that the City of Warren would then have the burden of justifying the restriction with an interest sufficiently compelling to outweigh the impermissible effect of the ordinance. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636

(1975). *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973). Further, the existence of a compelling interest may yet be insufficient if we find that the ordinance is too restrictive under the circumstances. *Shelton v Tucker,* 364 US 479; 81 S Ct 247; 5 L Ed 2d 231 (1960).

We have searched in vain for a sustainable theory upon which to base such a ruling. However, the ordinance in this case must pass constitutional muster.[2]

---

[2] In our judgment, the facts of this case present a classic "Trouble in River City" scenario (depicted in the broadway musical *The Music Man),* wherein popular pastimes of youths such as bowling, billiards, roller skating and pinball machines are singled out as activities which exert immoral influences on the youths. Establishments which cater to such activities have been held to be a common nuisance:

"The 'hurt' or injury to the community, which has occasioned bowling alleys kept for gain and common use to be regarded as common nuisances, arises from their tendency to withdraw the young and inconsiderate from any useful employment of their time, and to subject them to various temptations. * * * Clerks, apprentices and others are induced, not only to appropriate to them hours, which should be employed to increase their knowledge and reform their hearts, but too often to violate higher moral duties to obtain means to pay for the indulgence. Other bad habits are in such places often introduced or confirmed. The moral sense, the correct principles, the temperate, regular and industrious habits, which are the basis of a prosperous and happy community, are frequently impaired or destroyed. Bowling alleys without doubt may be resorted to by many persons without such injurious results. The inquiry is not what may be done at such places without injury to persons of fixed habits and principles, but what has been in the experience of man, their general tendency and result. The law notices the usual effect, the ordinary result of a pursuit or course of conduct, and by that decides upon its character. It need not be the necessary and inevitable result of a bowling alley kept for gain and common use, that it is thus injurious to the community, to make it a common nuisance." *State v Haines,* 30 Me 65, 75-76 (1849). Quoted in *Roy v Inhabitants of City of Augusta,* 387 A2d 237, 238-239 (Me, 1978).

In Michigan, see *Devereaux v Genesee Twp Board,* 211 Mich 38; 177 NW 967 (1920). *Bloss v Paris Twp,* 380 Mich 466; 157 NW2d 260 (1968). *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962). See also 100 ALR3d 252. In most instances, the moral stigma disappears as the interests of the youths change and as the mores of the community change (usually as the minors become responsible adults). We are not convinced, indeed we feel strongly, that other less restrictive alternatives are available to the City of Warren to help control the truancy of its youths. Unfortunately, this

The right of association is not expressly recited in or created by the language of the First Amendment of the Constitution to the United States. But it has long been recognized as implicit within and emanating from the rights expressly guaranteed. The Fourteenth Amendment makes the same applicable to the states. *Buckley v Valeo,* 424 US 1; 96 S Ct 612; 46 L Ed 2d 659 (1976); *Healy v James,* 408 US 169; 92 S Ct 2338; 33 L Ed 2d 266 (1972). The right of association has received recognition in connection with group associations. See Anno, 33 L Ed 2d 865. However, it has never been held to apply to the right of an individual to associate for purposes purely social in character.

The criterion established thus far appears to protect the right to associate when the expressive conduct around which the association is centered is accorded protection by the First Amendment. *Cousins v Wigoda,* 419 US 477; 95 S Ct 541; 42 L Ed 2d 595 (1975); *National Association for the Advancement of Colored People v Button,* 371 US 415; 83 S Ct 328; 9 L Ed 2d 405 (1963); *Serbian Eastern Orthodox Diocese for the United States of America and Canada v Milivojevich,* 426 US 696; 96 S Ct 2372; 49 L Ed 2d 151 (1976); *Kedroff v St Nicholas Cathedral of the Russian Orthodox Church in North America,* 344 US 94; 73 S Ct 143; 97 L Ed 120 (1952). Thus, a group which assembles for purposes constitutionally protected under the

observation does not reach the constitutional question. The jurisdictions that have examined similar ordinances concur that they are not unconstitutional.

See *Aladdin's Castle, Inc v Village of North Riverside,* 66 Ill App 3d 542; 383 NE2d 1316 (1978). *Rothner v City of Des Plaines,* 554 F Supp 465 (ND Ill, 1981). *Marshfield Family Skateland, Inc v Town of Marshfield,* 389 Mass 436; 450 NE2d 605 (1983), *app dis* 104 S Ct 475; 78 L Ed 2d 675 (1983). Compare *Aladdin's Castle, Inc v City of Mesquite,* 630 F2d 1029 (CA 5, 1980), *rev'd in part and remanded* 455 US 283; 102 S Ct 1070; 71 L Ed 2d 152 (1982), *rehearing* 713 F2d 137 (CA 5, 1983).

freedom of expression guarantee may properly require a compelling interest when the government seeks to interfere with or discourage the group's pursuit.

Defendant has not demonstrated that the communicative elements of playing video games are entitled to constitutional protection. We are not prepared on these facts to so hold. Therefore, the ordinance which restricts association for this purpose is not violative of the First Amendment. We adopt the rationale of the Massachusetts Supreme Court in *Marshfield Family Skateland, Inc v Town of Marshfield,* 389 Mass 436; 450 NE2d 605 (1983), *app dis* 104 S Ct 475; 78 L Ed 2d 675 (1983):

"[A]lthough entertainment may be entitled to First Amendment protection, 'to gain protected status, that entertainment must be designed to communicate or express some idea or some information.' * * * '[I]t appears that any communication or expression of ideas that occurs during the playing of a video game is purely inconsequential.' " 450 NE2d 609.[3]

II

Defendant next asserts that the application of the 17-year-old age requirement to amusement machine centers violates the federal and state constitutional guarantees of equal protection. US Const, Am XIV; Const 1963, art 1, § 2.

Equal protection cases are analyzed under a two-tiered approach:

---

[3] We concur in the observation by the *Marshfield* court that "in the future video games which contain sufficient communicative and expressive elements may be created". 450 NE2d 609-610. However, defendant in the present case does not argue that any particular video game in her establishment merits protection. Rather, defendant argues that video games are within the genre of entertainment forms protected by the First Amendment. It is this assertion that we reject.

"If the interest is 'fundamental' or the classification 'suspect', the court applies a 'strict scrutiny' test requiring the state to show a 'compelling' interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.

"Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it'. A classification will stand unless it is shown to be 'essentially arbitrary'. Few statutes have been found so wanting in 'rationality' as to fail to satisfy the 'essentially arbitrary' test." *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975) (footnotes omitted).

The equal protection guaranty of the Michigan Constitution is applied under the same standards as the corresponding provision of the federal constitution. *Fox v Employment Security Comm,* 379 Mich 579; 153 NW2d 644 (1967).

Age is not a suspect classification for equal protection purposes. *Massachusetts Board of Retirement v Murgia,* 427 US 307, 313-314; 96 S Ct 2562; 49 L Ed 2d 520 (1976); *People v Perkins,* 107 Mich App 440, 443; 309 NW2d 634 (1981). Nor, of course, are mechanical amusements or amusement machine centers a suspect classification. Defendant argues, however, that the classifications created by the ordinance as to age and mechanical amusements are arbitrary.

The city offers the following in its briefs on appeal as justification for the ordinance:

"The ordinance in question was passed because children were spending their lunch money on the pinball machines instead of buying lunch. Some children were

'borrowing' lunch money from other children to play the pinball machines. The term 'borrowing' includes strong-arm robbery. Children were stealing money from their parents. These instances occurred when pinball machine arcades were located close to schools. On occasion *[sic]* where the amusement center was located close to other stores, the neighboring store owners complained that at noon time and after school there were so many children gathering around that customers could not get into their stores. With parents and school officials complaining, something had to be done to regulate the amusement centers."

"* * * The lengthy police reports and citizen complaints documenting evidence of vandalism, truancy, drug and alcohol abuse, and irresponsible use of money, coupled with complaints of noise, littering, traffic problems and an increased crime and trespassing incidents in neighboring areas and businesses clearly demonstrates a deterioration of certain public interests."

The city also alleged that deleterious psychological effects result from playing video and pinball games, such as gambling compulsions and addiction to playing such games.

We do not believe defendant has sustained her burden of showing that the ordinance in question is without any reasonable justification. We disagree that the ordinance must be struck down because the city chose to treat minors and pinball or video machine arcades differently than adults and bowling alleys. *Cf. People v Palazzolo,* 62 Mich App 140; 233 NW2d 216 (1975). The current popularity of amusement arcades, particularly among young people, has clearly created problems unique to such businesses which the City of Warren has attempted to minimize by the implementation of the ordinance under attack here. The classifications in the ordinance are not "essentially arbitrary".

III

Finally, defendant's argument that the ordinance violates the prohibition against age discrimination in the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* is void of merit. Section 302 of the statute prohibits age-based discrimination in places of public accommodation "except where permitted by law". The term "law" includes the entire body of law, including, it is clear, validly passed municipal ordinances. See *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428, 441; 310 NW2d 408 (1981).

Also without merit is defendant's contention that the city had no authority to enact the ordinance. The City of Warren had constitutional authority, Const 1963, art 7, § 22, as well as statutory authority derived from the home-rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.* See MCL 117.4i(4); MSA 5.2082(4).

Defendant's conviction is hereby affirmed.