MOON v MICHIGAN REPRODUCTIVE & IVF CENTER, PC

Docket No. 299623. Submitted September 7, 2011, at Grand Rapids. Decided September 29, 2011. Approved for publication November 8, 2011, at 9:00 a.m.

Alison Moon brought an action in the Kent Circuit Court against Michigan Reproductive and IVF Center, P.C. (MRIC), and Grand Rapids Fertility & IVF, P.C. (GRFI), alleging that the clinics had discriminated against her on the basis of marital status contrary to Michigan's Civil Rights Act (CRA), MCL 37.2101 *et seq.* Moon stipulated to the dismissal of her claim against MRIC. The court, Mark A. Trusock, J., granted GRFI's motion for summary disposition, concluding that under Michigan common law, physicians may refuse to enter into a physician-patient relationship for any reason or no reason at all, and that GRFI's refusal to treat Moon was, accordingly, permitted by law. The court further noted that even if Moon had stated a claim for which relief could be granted under the CRA, it would have dismissed her claim against GRFI on the merits because the court believed that GRFI had articulated a legitimate, nondiscriminatory reason for refusing to treat Moon. Moon appealed.

The Court of Appeals *held*:

1. Under MCL 37.2302(a) of the CRA, "[e]xcept where permitted by law," a person may not deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of marital status. Marital status refers to whether an individual is married or not. The phrase "except where permitted by law" encompasses statutory law, common law, and constitutional law. However, the contractual nature of the physician-patient relationship, which under the common law permitted a physician to decline to enter into the relationship for any reason, does not allow a physician to decline to enter into the relationship on the basis of the patient's protected status under the CRA. Rather, a physician may only refuse to enter into a physician-patient relationship with a potential patient on the basis of legally permissible, nondiscriminatory reasons, and the trial court erred by holding otherwise.

2. To state a claim for violation of the CRA under MCL 37.2302(a), a plaintiff must establish (1) discrimination based on a protected characteristic (2) by a person (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation. In a discrimination action based on disparate treatment, the plaintiff has the initial burden to establish the existence of illegal discrimination, either through direct or indirect evidence. Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the decision-maker's actions. The presentation of direct evidence of discrimination requires that the case proceed as an ordinary civil matter. In this case, Moon provided direct evidence in support of her claim, specifically, e-mail messages that she received from GRFI which stated that GRFI did not provide services to single women. Accordingly, the case should have proceeded as an ordinary civil matter to discovery and trial. The provision of rebuttal evidence by GRFI was irrelevant at the summary disposition phase in light of the direct evidence of discrimination.

Reversed and remanded.

1. CIVIL RIGHTS — MARITAL STATUS — PUBLIC ACCOMMODATIONS — PHYSICIAN-PATIENT RELATIONSHIPS.

Under Michigan's Civil Rights Act (CRA), "[e]xcept where permitted by law," a person may not deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of marital status; marital status refers to whether an individual is married or not; the phrase "except where permitted by law" encompasses statutory law, common law, and constitutional law; however, the contractual nature of the physician-patient relationship, which under the common law permitted a physician to decline to enter into the relationship for any reason, does not allow a physician to decline to enter into the relationship on the basis of the patient's protected status under the CRA; rather, a physician may only refuse to enter into a physician-patient relationship with a potential patient on the basis of legally permissible, nondiscriminatory reasons (MCL 37.2302[a]).

2. CIVIL RIGHTS — DISCRIMINATION BASED ON PROTECTED CHARACTERISTICS — PUBLIC ACCOMMODATIONS — DISPARATE TREATMENT — DIRECT EVIDENCE.

To state a claim for violation of Michigan's Civil Rights Act (CRA), a plaintiff must establish (1) discrimination based on a protected characteristic (2) by a person (3) resulting in the denial of the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation; in a discrimination action based on disparate treatment, the plaintiff has the initial burden to establish the existence of illegal discrimination, either through direct or indirect evidence; direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the decision-maker's actions; the presentation of direct evidence of discrimination requires that the case proceed as an ordinary civil matter; the provision of rebuttal evidence by the defendant is irrelevant at the summary disposition phase if the plaintiff has presented direct evidence of discrimination (MCL 37.2302[a]).

*Rathert Law Offices, P.C.* (by *Kenneth A. Rathert*), and *MD Smith Law Office, PLLC* (by *Marlo D. Smith*), for Alison Moon.

*Garan Lucow Miller, P.C.* (by *Megan K. Cavanagh* and *Michael D. Wade*), for Grand Rapids Fertility & IVF, P.C.

Before: GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ.

PER CURIAM. Plaintiff Alison Moon contacted Grand Rapids Fertility & IVF, P.C. (GRFI), and Michigan Reproductive & IVF Center, P.C. (MRIC), and specifically asked if the clinics would provide in vitro fertilization (IVF)[1] services to a single woman. Both facilities responded that they did not provide IVF services to single women. Moon filed suit against both, alleging a single count of discrimination based on marital status under

---

[1] "In vitro fertilization" is defined as "fertilization of an egg in a laboratory dish or test tube; specifically: mixture usually in a laboratory dish of sperm with eggs which have been obtained from an ovary that is followed by introduction of one or more of the resulting fertilized eggs into a female's uterus[.]" MedlinePlus, Medical Dictionary <http://www.merriam-webster.com/medlineplus/in%20vitro%20fertilization> (accessed September 1, 2011).

the Civil Rights Act (CRA), MCL 37.2101 *et seq.* The circuit court dismissed Moon's discrimination action, stating that, under the common law, a doctor could refuse to enter into a doctor-patient relationship with any individual for any reason or no reason at all. Accordingly, the court concluded that the common law permitted a doctor to reject a potential patient even for discriminatory reasons.

Under the circuit court's reasoning, a doctor could refuse to treat any patient based solely on a characteristic protected under the CRA, including race, and yet avoid legal liability. Because such a result certainly was not contemplated by the Legislature, we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Moon began receiving IVF treatments from the University of Michigan Health System in Ann Arbor, but she desired to continue her treatments closer to her home in Portage. On July 3, 2008, Moon sent an e-mail to GRFI and specifically inquired if the facility provided IVF treatment to single women. Dr. Douglas Daly responded via e-mail that while GRFI provided various fertility treatments to all women, it did not provide insemination services to single women. Dr. Daly referred Moon to another clinic that is not a party to this suit. Dr. Daly's response stated in full:

> We provided [sic] medically indicated treatment for all women. However, the state of Mochigan [sic], like most states, does not have adequate statutory or case law for reproductive health. All children have the right to child support (the basis of paternity payments) but in the case of donor insemination (or any conception outside a marriage) the law does not provide any definition for paternity. By contract the donor is protected by the company processing the sperm. The company is protected by the legal agree-

ment with the MD. The inseminated woman can NOT sign away the right to child support for the child, therefore in the absence of any controlling law or legal precident [sic] the child may be able to claim child support from the MD involved. And make that claim retroactively until 21 yrs of age (maybe longer) – similar to the precedent set by malpractice litigation.

Until I feel there is adequate law I will not be providing insemination services to single individuals. While the issue is somewhat different there is an IVF program in Boston Ma (a terribly conservative state) that has been ordered to pay 1.2M in child support – no one believed (except me) when the case was filled [sic] there was any chance the plantive [sic] would win. I am not willing to gamble my financial future on this issue. If you only need insemination – contact [another clinic] – we supply them with all medical treatment for the patient – other than IVF.

Moon queried whether the recommended clinic would similarly deny her treatment. Dr. Daly responded that the recommended clinic might deny her treatment. However, he indicated:

They are not as jaded regarding the legal profession as I am and since they are not an IVF program they have a much lower profile. They have been providing this service for many years – and I have provided any necessary infertility based medical evaluation and treatment – other than the actual inseminations.

Dr. Daly and Moon subsequently exchanged two more e-mails discussing her chances of pregnancy and multiple pregnancy using different types of fertility drugs.

In August 2008, Moon falsely informed MRIC that she was in a relationship in order to secure an initial consultation. When Moon ultimately informed Dr. James Young that she was single, the doctor informed her that MRIC does not provide IVF services for single women. Dr. Young referred Moon to a nurse practitioner who could perform

the artificial inseminations. Upon meeting Moon, however, the nurse practitioner felt that Moon was "emotionally unstable" and informed Dr. Young that Moon intended to file suit against him. Accordingly, Dr. Young and MRIC refused to treat Moon. As a result of GRFI's and MRIC's denial of treatment, Moon travelled to Ypsilanti, over two hours away from her home, to receive IVF treatment.

Moon filed suit against GRFI and MRIC on May 20, 2010, alleging a single count of discrimination based on marital status under MCL 37.2302 of the CRA. GRFI filed a motion for summary disposition, citing the statute's express exception to the antidiscrimination legislation: discrimination is prohibited "[e]xcept where permitted by law . . . ." GRFI asserted that the creation of a doctor-patient relationship is consensual under the common law and "a physician is not required to render services to anyone." Accordingly, GRFI contended that the CRA was inapplicable to the doctor-patient relationship. Rather, the CRA was intended to prevent discrimination in more informal relationships, such as those between a retail store and its customer or a common carrier and its passengers.

Moon responded that, in light of the comments made by Dr. Daly in his e-mails, GRFI had refused to provide IVF treatment to her solely because she is a single woman. Moon conceded that GRFI was not required to enter into a doctor-patient relationship with her. However, Moon argued that the decision to accept or deny her as a patient had to be for legitimate, nondiscriminatory reasons.

The circuit court granted GRFI's motion for summary disposition under MCR 2.116(C)(8) and additionally under MCR 2.116(C)(10). The circuit court agreed with GRFI that, under the Michigan common law:

[A] physician-patient relationship is voluntary and consensual, and a physician may refuse to enter into such a relationship for any reason or no reason at all. This Court does not believe the [CRA] was intended to function so as to force professionals to enter into relationships with clients. That is likely one reason why MCL 37.2302 begins with the phrase "[e]xcept where permitted by law." [Third alteration in original.]

Although the circuit court dismissed Moon's complaint for failure to state a legally cognizable claim, the court further noted that it would have dismissed Moon's claim on the merits as well. Specifically, the court treated Moon's claim as presenting indirect evidence of disparate treatment, and ruled that GRFI could avoid liability by providing a legitimate, nondiscriminatory reason for refusing treatment. The circuit court believed that Dr. Daly had provided such a legitimate reason—"potential financial liability given the lack of regulation and caselaw in Michigan regarding IVF services."[2]

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." In evaluating such a motion, a court considers the entire record in the light most

---

[2] Moon subsequently stipulated to the dismissal of her claim against MRIC with prejudice.

> favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004) (citation omitted).]

We review de novo underlying issues of statutory interpretation. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The goal of statutory interpretation is to discern the intent of the Legislature from the language of the statute. "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). If a statute is ambiguous, however, judicial construction is permitted. *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 449; 770 NW2d 117 (2009).

### III. A PLAINTIFF MAY FILE SUIT AGAINST A "PROFESSIONAL" UNDER THE CRA

First and foremost, we reject the circuit court's conclusion that a professional, such as a doctor, may reject a patient or client for any reason, including discriminatory animus toward a protected characteristic. This runs afoul of the very purpose of all antidiscrimination legislation and cannot be supported.

Marital status occupies a coequal place in the catalog of protected characteristics identified in the CRA. MCL 37.2102(1) provides:

> The opportunity to obtain employment, housing and other real estate, *and the full and equal utilization of public accommodations*, public service, and educational facilities without discrimination because of religion, race, color,

national origin, age, sex, height, weight, familial status, or *marital status* as prohibited by this act, is recognized and declared to be a civil right. [Emphasis added.]

The Michigan Supreme Court defined "marital status" under the CRA in *Miller v C A Muer Corp*, 420 Mich 355, 362-363; 362 NW2d 650 (1984), as referring simply to whether an individual is married or not.

MCL 37.2301(a) defines a "place of public accommodation" as "a business, or . . . health . . . facility . . . whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2302 prohibits discrimination by a place of public accommodation as follows:

*Except where permitted by law*, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. [Emphasis added.]

For purposes of summary disposition, GRFI stipulated that it is a place of public accommodation to which the statutory prohibition of discrimination applies. The parties disagree whether GRFI was able to "[d]eny [Moon] the full and equal enjoyment of" its services because the denial was otherwise "permitted by law." *Id.*

This Court has previously held that the phrase "[e]xcept where permitted by law" in MCL 37.2302 encompasses the common law and constitutional law, as well as statutory law. *People v Walker*, 135 Mich App 267, 278; 354 NW2d 312 (1984); *Cheeseman v American Multi-Cinema, Inc*, 108 Mich App 428, 433; 310 NW2d 408 (1981). Compare *Dep't of Civil Rights ex rel Forton*

*v Waterford Twp Dep't of Parks & Recreation*, 425 Mich 173, 189; 387 NW2d 821 (1986) (declining to answer the query whether the phrase "except as permitted by law" includes "constitutional and common law as well as statutory law"). Assuming arguendo that the statutory exception includes discrimination permitted under the common law, we disagree with the circuit court's overly broad interpretation of the consensual and voluntary nature of the doctor-patient relationship.

GRFI correctly notes that a doctor-patient relationship is contractual and may only be established voluntarily and through the consent, either express or implied, of both the doctor and the patient. *Oja v Kin*, 229 Mich App 184; 581 NW2d 739 (1998), citing *Hill v Kokosky*, 186 Mich App 300; 463 NW2d 265 (1990), *St John v Pope*, 901 SW2d 420 (Tex, 1995), and *McKinney v Schlatter*, 118 Ohio App 3d 328; 692 NE2d 1045 (1997). However, the cases cited by GRFI describe the creation of a doctor-patient relationship in establishing the necessary elements of a medical-malpractice claim. The cited cases absolve a doctor of medical-malpractice liability if the doctor did not explicitly or implicitly consent to enter into a doctor-patient relationship with the plaintiff. GRFI has not cited a single case in which a doctor was allowed to use the consensual nature of the doctor-patient relationship to discriminate against potential patients based on protected characteristics such as race or marital status.

As noted by our Supreme Court in *Miller*, 420 Mich at 362-363:

> Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs. The [CRA] is aimed at the prejudices and biases borne against persons because of their membership in a certain class, and

seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. [Quotation marks and citations omitted.]

The CRA certainly serves to prohibit doctors and medical facilities from refusing to form a doctor-patient relationship based solely on the patient's protected status. A contrary interpretation would allow a doctor to follow his or her personal prejudices or biases and deny treatment to a patient merely because the patient is African-American, Jewish, or Italian. Rather, following this state's enactment of the CRA, a doctor may only deny his or her consent to enter into a doctor-patient relationship with a potential patient based on legally permissible, nondiscriminatory reasons.

We find *Lyons v Grether*, 218 Va 630; 239 SE2d 103 (1977), instructive in this regard. In *Lyons*, 218 Va at 631, the plaintiff was a blind patient who had entered a physician's waiting room with her guide dog. The doctor refused to treat the plaintiff unless she removed her dog from the office. Under Virginia law, the blind are " 'entitled to full and equal accommodations' " and " 'privileges of . . . places of public accommodation' " and also have " 'the right to be accompanied by a dog guide . . . .' " *Id.* at 632 n 1, quoting former Va Code Ann 63.1-171.2. The Virginia Supreme Court acknowledged that, under the common law, "a physician has no legal obligation to accept as a patient everyone who seeks his services" and that the creation of the doctor-patient relationship is consensual and contractual. *Id.* at 632-633. However, the court determined that there was a remaining issue of material fact whether the defendant doctor discriminatorily terminated his relationship with the plaintiff patient because she exercised her rights under the state's "White Cane Act." *Id.* at 634-635. The current case poses the similar question of

whether a doctor may refuse to enter into a doctor-patient relationship with a patient based on discriminatory factors in violation of the CRA. The answer to that question clearly is no. Accordingly, the circuit court erred by dismissing Moon's discrimination claim pursuant to MCR 2.116(C)(8).

### IV. MOON PRESENTED DIRECT EVIDENCE OF DISCRIMINATION AND THE CIRCUIT COURT IMPROPERLY DISMISSED HER CLAIM ON THE MERITS

We further reject the circuit court's conclusion that Moon failed to create a genuine issue of material fact that GRFI discriminatorily rejected her as a patient.

> In order to state a claim under MCL 37.2302(a), plaintiff must establish four elements: (1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation. [*Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007).]

Moon clearly established that she was denied the enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered by GRFI, which stipulated to being a place of public accommodation for purposes of summary disposition. The only question remaining is whether she created a genuine issue of material fact that GRFI discriminated against her based on marital status. In this regard, Moon argues that she was given disparate treatment from married women.

In a discrimination action based on disparate treatment, the plaintiff has the initial burden to establish the existence of illegal discrimination, either through direct or indirect evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). "[P]roof of

discriminatory motive is required in order to establish a prima facie case" of disparate treatment. *Dep't of Civil Rights ex rel Peterson v Brighton Area Schools*, 171 Mich App 428, 439; 431 NW2d 65 (1988); see also *Farmington Ed Ass'n v Farmington School Dist*, 133 Mich App 566, 572; 351 NW2d 242 (1984). Direct evidence is " 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the' " decision-maker's actions. *Hazle*, 464 Mich at 462, quoting *Jacklyn v Schering-Plough Healthcare Prod Sales Corp*, 176 F3d 921, 926 (CA 6, 1999).

Moon proffered direct evidence of discrimination, specifically, the e-mail messages that she received from Dr. Daly, indicating that GRFI did not provide IVF treatment to single women. Dr. Daly's statement, "Until I feel there is adequate law I will not be providing insemination services to single individuals," tends to establish " 'that unlawful discrimination was at least a motivating factor' " in Dr. Daly's decision to deny Moon IVF services. *Hazle*, 464 Mich at 462 (citation omitted). When a plaintiff presents direct evidence of discrimination, " 'the case should proceed as an ordinary civil matter.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 540; 620 NW2d 836 (2001), quoting *DeBrow v Century 21 Great Lakes, Inc*, unpublished opinion of the Court of Appeals, issued August 13, 1996 (Docket No. 161048) (YOUNG, J., dissenting) (*DeBrow I*). As an ordinary civil matter, the circuit court should have denied GRFI's motion for summary disposition on the merits and proceeded through discovery and to trial if necessary.

We note that the circuit court's error stemmed from its application of the shifting burdens standard of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct

1817; 36 L Ed 2d 668 (1973), to Moon's discrimination claim. "The shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination." *DeBrow (After Remand)*, 463 Mich at 539. As Moon presented *direct evidence* of discrimination, she was not required to "present a rebuttable prima facie case . . . from which a factfinder could infer" discriminatory animus. *Hazle*, 464 Mich at 462 (quotation marks, citation, and emphasis omitted). Further, it was irrelevant at the summary disposition phase whether GRFI had rebutted Moon's discrimination claim by articulating "a legitimate, nondiscriminatory reason for its" actions. *Id.* at 464. Rather, the credibility of GRFI's claimed motive for denying IVF treatment to Moon (fear of financial liability for the child conceived) is a question for the fact-finder. And, " '[n]either this Court nor the trial court can make factual findings or weigh credibility in deciding a motion for summary disposition.' " *DeBrow (After Remand)*, 463 Mich at 540, quoting *DeBrow I* (YOUNG, J., dissenting).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ., concurred.