# STATE OF MICHIGAN

# COURT OF APPEALS

YASMINE DIALLO,

        Plaintiff-Appellant,

and

AFFILIATED DIAGNOSTICS OF OAKLAND,
LLC,

        Intervening-Plaintiff,

v

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 15, 2016

No. 328639
Wayne Circuit Court
LC No. 14-008577-NF

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

In this action for the recovery of personal protection insurance (PIP) benefits pursuant to the no-fault act, MCL 500.3101, *et seq.*, plaintiff Yasmine Diallo appeals the trial court's order that granted summary disposition in favor of defendant Nationwide Mutual Fire Insurance Company.[1] We affirm.

## I. BASIC FACTS

On July 2, 2013, plaintiff was in an automobile accident while driving her car, insured by defendant, whose policy contained this general fraud exclusion:

> WE MAY VOID THIS POLICY, DENY COVERAGE FOR AN
> ACCIDENT OR LOSS, OR AT OUR ELECTION, ASSERT ANY OTHER
> REMEDY AVAILABLE UNDER APPLICABLE LAW, IF ANY INSURED

---

[1] Intervening plaintiff Affiliated Diagnostics of Oakland, LLC, is not a party to this appeal.

PERSON OR ANY OTHER PERSON SEEKING COVERAGE UNDER THIS POLICY HAS KNOWINGLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT IN CONNECTION WITH THE FILING OR SETTLEMENT IN ANY CLAIM.

After the accident, plaintiff submitted claims for no-fault benefits. When defendant refused to pay those benefits, plaintiff brought this suit for PIP benefits.

During discovery, defendant obtained evidence, in the form of plaintiff's Facebook posts, that she had been in Europe from April to August of 2014. Nonetheless, plaintiff submitted claims for household replacement services to defendant for that time period, which forms were signed by plaintiff's husband, Mohamadou Sarr. Sarr provided undisputed deposition testimony that he was not in Europe with plaintiff during the months in question.

Because of this obvious misrepresentation, defendant moved for summary disposition based on the assertion that plaintiff violated the fraud exclusion in the insurance policy when she submitted household replacement services claims for times when she was overseas. In its support of its motion for summary disposition, defendant relied heavily on this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014). Specifically, defendant argued that Sarr could not have performed the replacement services in question because he was not with plaintiff in Europe. Plaintiff countered and argued that there was no fraud, or alternatively that, even if there was fraud, the trial court should not consider it because plaintiff's claims for the dates in question were not supported by disability slips. The trial court ultimately agreed with defendant and granted summary disposition in favor of defendant.

## II. ANALYSIS

### A.

"This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Envtl Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue in respect to any material fact[] and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Further, we review the interpretation of an insurance contract, just like any other contract, de novo. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007). In doing so, "[w]e look at the language of the insurance policy and interpret its terms in accordance with the principles of contract construction. Where there is no ambiguity, an insurance contract must be enforced as written in accordance with its terms." *Allstate Ins Co v Muszynski*, 253 Mich App 138, 141; 655 NW2d 260 (2002) (citation omitted).

-2-

B.

"Initially, in reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "The language in an insurance contract should be read as a whole, and we construe the language to give effect to every word, clause, and phrase." *Bahri*, 308 Mich App at 423. Given clear and unambiguous contract language, this Court "must enforce the specific language of the contract." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). Further, "[a] court must not hold an insurance company liable for a risk that it did not assume." *Henderson*, 460 Mich at 354. Where an ambiguity in the language of a contract exists, the ambiguity will be construed against the insurer. *Bahri*, 308 Mich App at 424.

In *Bahri*, 308 Mich App at 424-425, this Court considered a similar fraud exclusion clause in an automobile insurance policy and provided the following requirements to establish fraud:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [Quotation marks and citations omitted.]

In other words, if plaintiff committed fraud in connection with her request for household replacement services, then her entire claim would be barred. See *id*.

Our recent decision in *Bahri* is controlling and dispositive of plaintiff's claims. In *Bahri*, the plaintiff was injured in an automobile accident that took place on October 20, 2011. *Id*. at 421. The plaintiff was insured under a no-fault insurance policy issued by the defendant, which contained a general fraud exclusion that provided, "[w]e do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." *Id*. at 423-424. Following the accident, the plaintiff submitted a PIP claim to the defendant, including claims for replacement services. *Id*. at 422. "[The] plaintiff submitted to the defendant 'Household Services Statements' which indicated that multiple replacement services were provided daily to [the] plaintiff from October 2011 through February 29, 2012." *Id*. Specifically, the replacement services included claims for October 1 through October 19, 2011, which were the 19 days preceding the actual accident. *Id*. Further, surveillance video discovered the plaintiff performing activities for which the plaintiff was seeking replacement services coverage. *Id*. When the defendant refused to pay benefits, the plaintiff brought suit seeking payment, and the defendant argued that it was relieved from the responsibility of paying given the plaintiff's fraudulent submission of household replacement services claims. *Id*. The trial court agreed with the defendant, granting it summary disposition, and the plaintiff appealed. *Id*.

On appeal, this Court held that it was required to consider the exact language of the contract in determining coverage. *Id*. at 424. This Court further ruled that, in order to void the policy and refuse benefits on the basis of fraud, there were four requirements that the insurer must show:

> (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Id*. at 424-425.]

This Court took into account that the plaintiff had submitted claims for replacement services for 19 days before the accident took place. *Id*. at 425. Plus, there was undisputed video evidence that the plaintiff had performed tasks for which the plaintiff was claiming the replacement services after the accident occurred. *Id*. at 425-426. This Court reasoned that the evidence "belies [the] plaintiff's assertion that she required replacement services, and it directly and specifically contradicts representations made in the replacement services statements." *Id*. at 426. Given that reasoning and evidence, this Court held that there was no genuine issue of material fact that the plaintiff had committed fraud in submitting the replacement care claims and that this fraud required that the plaintiff's entire claim be barred. *Id*.

The facts of the present case reveal that plaintiff submitted claims for household replacement services for every day from April 1, 2014, through the end of August of 2014. Those forms list the address as plaintiff and Sarr's home address. The forms in question were all signed by Sarr. The forms indicate that there were "multiple providers" but only listed the names of Sarr and Khallo Diallo, plaintiff's mother.

It is further undisputed that during the months of April, May, June, July, and part of August, plaintiff was in Europe. It is also undisputed that Sarr and Khallo were not in Europe during those same times. During their depositions, plaintiff and Sarr were repeatedly asked if the household replacement services were actually performed on the dates in question by the people that signed the documents. Plaintiff testified that during 2013 and possibly January of 2014, household services were performed by both Khallo and Sarr, but after Khallo moved back to Ohio in December of 2013 or January of 2014, the household replacement services were performed *solely by Sarr*. Plaintiff never mentioned, nor was she asked about, travel to Europe on the months in question. Further, before defendant's summary disposition motion on the grounds of fraud, neither plaintiff nor Sarr indicated that the household services were performed by anyone other than Sarr or Khallo. Again, Sarr was specifically asked about whether he performed the household services in question. He indicated that he did. When asked again, Sarr assured defendant that if he signed a replacement services claim, then he indeed performed the services.[2]

---

[2] Specifically, Sarr stated, "Anything is signed here, I do it [sic]."

Accordingly, on this record, we are presented with a strikingly similar case to *Bahri*. Here, as in *Bahri*, it was physically impossible for the household replacement services to be performed in the manner outlined in the submitted claims. In *Bahri*, there were claims made for replacement services that were impossible to exist because the claimed days occurred before the accident that allegedly caused the injuries occurred. In the present case, household services claims were submitted by Sarr when he was undisputedly in Michigan and plaintiff was undisputedly in Europe. Further, both plaintiff and Sarr provided sworn testimony that the submitted replacement services forms reflected that Sarr actually performed the services that were claimed. Quite frankly and simply, that was impossible because Sarr and plaintiff were on different continents, an ocean away from one another.

Plaintiff argues that the instant case can be distinguished from *Bahri* in several ways. First, plaintiff argues that, unlike in *Bahri*, the services here were actually provided to plaintiff. In other words, plaintiff still received the replacement care while in Europe, but it was not performed by Sarr. In support of this, plaintiff refers to an affidavit submitted by Sarr after his deposition, stating that he believed he was signing the forms on behalf of all providers and that he was confused during his deposition about the meaning of the word "you." Specifically, Sarr averred that "you" in his native language, French, has both singular and plural forms. In other words, when Sarr answered questions phrased with "you" he understood the question to be referring to all of the providers.[3] The trial court, however, was correct in discounting this affidavit, because, as we have previously held, "[P]arties may not contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001) (citations and quotation marks omitted).[4] Furthermore, even looking past Sarr's testimony, plaintiff also testified that only Khallo or Sarr performed the household replacement services and the forms never list anyone other than those two as the service providers. As such, assuming that Sarr's affidavit was proper to consider, there was still undisputed evidence that plaintiff had submitted fraudulent claims for household replacement services. See *Bahri*, 308 Mich App at 424-426.

---

[3] We need not opine on the validity of this contention. But we do note that reliance on any pronoun confusion with "you" appears to be overstated, as Sarr stated in his deposition, "Anything is signed here, I do it [sic]." Notably, in this instance, he used the singular "I" instead of the allegedly confusing word "you."

[4] The trial court stated that it discounted the affidavit because it found it to be not credible. But on motions for summary disposition, courts are precluded from making credibility determinations. *Moon v Mich Reproductive & IVF Ctr, PC*, 294 Mich App 582, 595; 810 NW2d 919 (2011). If we were to assume that the trial court made this statement as an assessment of credibility, rather than a statement that the affidavit was insufficient to create a fact question pursuant to *Dykes*, then the trial court undoubtedly committed an error pursuant to the summary disposition standard stated in *Moon*. However, because there was a legal basis for excluding the affidavit, any error would be harmless. In other words, the trial court was permitted to discount Sarr's affidavit because it was an impermissible attempt to create an issue of fact arising out of Sarr's damaging deposition testimony. See *Dykes*, 246 Mich App at 480.

Plaintiff also avers that there could be no fraud because claims for the subject months were not valid in any event because they were not supported by disability slips from a doctor. We find this issue to be abandoned. "An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). "This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority." *Id*. Plaintiff has failed to provide any law to support the suggestion that a claim for household replacement services requires a disability slip for payment, or that the lack thereof can remove a claim that might otherwise be considered fraudulent. Therefore, this issue is abandoned. See *id*.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Cynthia D. Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter

-6-