*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAIRYLAND INSURANCE COMPANY,

        Plaintiff/Counterdefendant-Appellee,

v

CAMERON MEWS,

        Defendant/Counterplaintiff,

and

INTENSIVE CASE MANAGEMENT, LLC,

        Defendant-Appellant.

FOR PUBLICATION
July 20, 2023
9:05 a.m.

No. 359855
Oakland Circuit Court
LC No. 2020-184192-NF

INTENSIVE CASE MANAGEMENT,

        Plaintiff-Appellee,

v

DAIRYLAND INSURANCE COMPANY,

        Defendant,

and

MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION,

        Defendant-Appellant.

No. 361345
Wayne Circuit Court
LC No. 21-013892-NF

DIVERSIFIED HOME HEALTH CARE,

Plaintiff-Appellee,

v                                                    No. 361348
                                                     Wayne Circuit Court
DAIRYLAND INSURANCE COMPANY,                         LC No. 21-013983-NF

        Defendant,

and

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

        Defendant-Appellant.

INTENSIVE CASE MANAGEMENT,

        Plaintiff-Appellee,

v                                                    No. 361351
                                                     Wayne Circuit Court
DAIRYLAND INSURANCE COMPANY,                         LC No. 21-013892-NF

        Defendant-Appellant,

and

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

        Defendant.

DIVERSIFIED HOME HEALTH CARE,

        Plaintiff-Appellee,

v                                                    No. 361357
                                                     Wayne Circuit Court
DAIRYLAND INSURANCE COMPANY,                         LC No. 21-013983-NF

        Defendant-Appellant,

and

-2-

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

        Defendant.

_____

Before:  PATEL, P.J., and BOONSTRA and RICK, JJ.

PATEL, P.J.

        These consolidated appeals[1] involve separate lawsuits regarding benefits under the no-fault act, MCL 500.3101 *et seq*., for Cameron Mews.  Mews's insurer, Dairyland Insurance Company, initiated the first lawsuit, against Mews, in Oakland Circuit Court to establish Mews's entitlement to personal protection insurance (PIP) benefits.  In the interim, Mews's providers, Intensive Case Management (ICM) and Diversified Home Health Care, filed separate suits against Dairyland and the Michigan Catastrophic Claims Association (MCCA) in the Wayne Circuit Court, seeking the same determination on Mews's behalf as his assignees.

        Because no prior pending suit existed between ICM and Dairyland, we find that the Oakland Circuit Court erred by denying ICM's motion for summary disposition under MCR 2.116(C)(6) in Docket No. 359855.  And because the pending Wayne Circuit case was the first case between ICM and Dairyland, the Wayne Circuit Court did not err by denying Dairyland's motion for summary disposition under MCR 2.116(C)(6) in Docket No. 361351.  The Wayne Circuit Court also did not abuse its discretion by denying Dairyland's motion for change of venue given that Dairyland failed to establish that the Wayne County venue was inconvenient.  In Docket No. 361357, the Wayne Circuit Court did not err by denying Dairyland's motion for summary disposition under MCR 2.116(C)(6) because no prior pending litigation existed between Dairyland and Diversified.  The Wayne Circuit Court also did not abuse its discretion by denying Dairyland's motion for change of venue given that Dairyland failed to establish that the Wayne County venue was inconvenient.  Finally, in Docket Nos. 361345 and 361348, the Wayne Circuit Court erred by denying the MCCA's motion for summary disposition under MCR 2.116(C)(8) on ICM and Diversified's claims for tortious interference with a business expectancy and violation of the ELCRA.  We reverse and remand for further proceedings in Docket Nos. 359855, 351345, and 361348; and affirm in Docket Nos. 361351 and 361357.

## I.  FACTS AND PROCEDURAL HISTORY

        On October 14, 2010, Mews was in a motorcycle accident.  Mews sustained a cervical-spine injury that rendered him a tetraplegic.  Since that time, Mews has required around-the-clock nursing and attendant care.  Mews receives some services through ICM, a business founded, owned, and run by Mews's mother, Rebecca Mews, and some services through Diversified.

---

[1] This Court consolidated these appeals on its own motion.  See *Intensive Case Mgt v Dairyland Ins Co*, unpublished order of the Court of Appeals, entered Sept 23, 2022 (Docket No. 361345).

Dairyland is the no-fault insurer responsible for payment of Mews's PIP benefits. Pursuant to a settlement agreement, Dairyland paid PIP benefits for attendant care and skilled-nursing care at an agreed upon rate through November 30, 2019.[2]

After the settlement agreement expired, Mews claimed PIP benefits for attendant care and skilled-nursing care beginning on December 1, 2019. Dairyland maintained that Mews failed to respond to its requests for information and documentation regarding his claim, failed to submit to insurance medical examinations (IMEs), and failed to allow an in-home inspection. Dairyland asserted that it was not liable nor required to pay for benefits claimed by Mews for which Dairyland was not provided reasonable proof of fact and amount of loss.

## A. OAKLAND CIRCUIT COMPLAINT AND COUNTERCOMPLAINT

On October 22, 2020, Dairyland filed suit in the Oakland Circuit Court seeking a declaratory judgment that Mews was required to attend an IME and that Dairyland was not liable for any claims for which Mews had not submitted reasonable proof (hereinafter, "Oakland Circuit case" (LC No. 20-184192-NF)). Mews filed a counterclaim against Dairyland for recovery of PIP benefits, and added the MCCA as a defendant. Mews alleged a claim of tortious interference with a business expectancy against the MCCA, asserting that the MCCA had been leveraging its position as a reimbursement agency to assert influence over the rates paid for Mews's care. He also alleged that the MCCA violated the ELCRA by denying or reducing Mews's rates for services because he is African-American.

The MCCA moved for summary disposition under MCR 2.116(C)(8), which the Oakland Circuit Court granted. The court concluded that Mews's claim for tortious interference with business expectancy failed as a matter of law

> because the MCCA's alleged conduct is not per se wrongful, nor is it a lawful act done with malice. The MCCA has a duty under the no-fault act to oversee Dairyland's adjustment of Mews'[s] claim, pursuant to MCL 500.3104(7). Specifically, MCL 500.3104(7)(g) provides that the MCCA *shall*
>
> > [e]stablish procedures for reviewing claims procedures and practices of members of the association. If the claims procedures or practices of a member are considered inadequate to properly service the liabilities of the association, the association may undertake or may contract with another person, including another member, to adjust or assist in the adjustment of claims for the member on claims that create a potential liability to the association and may charge the cost of the adjustment to the member.
>
> Further, MCL 500.3104(7)(b) provides that Dairyland must provide reports to the MCCA about Mews'[s] claim, including "subsequent developments likely to

---

[2] Because the PIP expenses incurred to date exceed the $600,000 statutory threshold, Mews's claim is "catastrophic" and Dairyland may seek reimbursement from the MCCA for PIP benefits paid beyond the statutory threshold. See MCL 500.3104.

materially affect the interest of the association in the claim." MCL 500.3104(7)(c) requires Dairyland to report detailed losses and expenses associated with Mews'[s] claim "in the form and detail as required by the plan of operation." The preapproval process is permitted by the plan of operation, which in turn is authorized by statute, as a means of containing costs of catastrophic claims.

Mews'[s] allegations that the MCCA's conduct is per se improper, illegal, and unethical are mere conclusions, and they are not supported by facts.

The court also found that Mews's ELCRA claim failed as a matter of law

because the MCCA is not a place of public accommodation for purposes of ELCRA. The MCCA offers no products, services, facilities, or anything else to the public. It is an association, created by statute, whose members are insurers. Contrary to Mews'[s] allegation, the MCCA is not an insurance company and it does not sell insurance or provide benefits to the public. Further, the Michigan Supreme Court has held that the MCCA is not a state agency. *League Gen Ins Co v Mich Catastrophic Claims Ass'n*, 435 Mich 338, 350-351; 458 NW2d 632 (1990) (holding the MCCA is not a state agency subject to the Administrative Procedures Act).

Dairyland and Mews ultimately settled Mews's claims for attendant care, but only through July 31, 2021. On October 6, 2021, Dairyland filed a motion for leave to amend its complaint. Dairyland asserted that it anticipated Mews would continue to claim PIP benefits incurred after July 31, 2021 and thus sought to amend its pleadings to limit damages to claims incurred on or after August 1, 2021 and to add ICM as a defendant. The proposed amended complaint sought declaratory relief that (1) no amount was due or owing because Mews had failed to provide "reasonable proof" of the amount of loss to recover PIP benefits; (2) the no-fault auto insurance reform legislation applied to Mews's claim for attendant care at home health-aid or skilled-nursing levels, as well as case management and other benefits, including the 56-hour limit for in-home care and the statutory rate reductions; (3) that Dairyland properly calculated the rates for Mews's providers, including ICM; and (4) Mews was entitled to 40 hours a week of skilled-nursing care at $36.50 an hour, two hours of case management each week at $36.50 an hour, and ICM is not entitled to any more than $14 an hour for home health-aid level care. Mews opposed Dairyland's motion for leave to file an amended complaint, arguing that a new lawsuit should be filed "[i]f additional issues arise[.]"

## B. WAYNE CIRCUIT COMPLAINTS

On October 12, 2021, while Dairyland's motion was pending in the Oakland Circuit case, ICM filed a separate lawsuit in the Wayne Circuit Court against Dairyland and the MCCA (LC No. 21-013892-NF) (hereinafter "ICM Wayne Circuit case"). ICM indicated in the complaint that Mews had "assigned his rights to ICM, with respect to the amounts that are past due and owing from" Dairyland. ICM alleged, on behalf of Mews, that (1) Dairyland breached its statutory duty to provide ICM payment for Mews's attendant-care services from August 1, 2021, forward, (2) the MCCA tortiously interfered with a business relationship by leveraging its position as a reimbursement agency to reduce the rates paid for Mews's care, and (3) both Dairyland and the

-5-

MCCA violated the ELCRA by denying or reducing Mews's claims because ICM is an African-American-owned company not entitled to the same rates for the same or similar service as a white-owned company providing the same services.

The next day, Diversified filed a separate lawsuit in the Wayne Circuit Court against Dairyland and the MCCA (LC No. 21-013983-NF) (hereinafter "Diversified Wayne Circuit case").[3] Diversified also indicated that Mews had "assigned his rights to [Diversified], with respect to the amounts that are past due and owing from [Dairyland] to [Diversified] for services previously rendered and timely submitted to [Dairyland] for payment." Diversified alleged, on behalf of Mews, that (1) Dairyland breached its statutory duty to provide Diversified payment for Mews's attendant-care services, (2) the MCCA tortiously interfered with a business relationship by leveraging its position as a reimbursement agency to reduce the rates paid for Mews's care, and (3) both Dairyland and the MCCA violated the ELCRA by denying or reducing Mews's claims because Diversified is a African-American-owned company entitled to the same rates for the same or similar service as a white-owned company providing the same services.

C. ICM'S MOTION FOR SUMMARY DISPOSITION IN OAKLAND CIRCUIT CASE

Two weeks after ICM and Diversified filed their Wayne Circuit cases, the Oakland Circuit Court granted Dairyland's motion to amend its complaint. On October 27, 2021, Dairyland filed its amended complaint. In lieu of answering the complaint, ICM filed a motion for summary disposition under MCR 2.116(C)(6), arguing that dismissal was proper because the Oakland Circuit case and the ICM Wayne Circuit case involved the exact same parties (Dairyland and ICM). ICM maintained that the court in each case would be asked to adjudicate the same issues: "[T]he entitlement to no-fault benefits under MCL 500.3157, the number of hours for which the service providers can be compensated and the appropriate rates for those services." ICM asserted that because the ICM Wayne Circuit case had been filed before Dairyland filed its amended complaint in the Oakland Circuit case, dismissal was proper.

Dairyland responded that the motion should be denied because the Oakland Circuit case was already pending at the time that the ICM Wayne Circuit case was filed. Dairyland agreed that the Oakland Circuit case and the ICM Wayne Circuit case involved the same parties and the same issues to be litigated. But Dairyland posited that dismissal was not proper because the Oakland Circuit case was the first pending case and no final order had been entered. Dairyland argued that the amended complaint did not constitute an entirely new lawsuit because it involved the same claims as the underlying complaint, i.e., the parties continued to dispute the reasonable number of hours required, the reasonable rate, and whether Mews had provided reasonable proof of his claims.

The court denied ICM's motion for summary disposition pursuant to MCR 2.116(C)(6), reasoning:

---

[3] When the ICM Wayne Circuit case and the Diversified Wayne Circuit case are referred to collectively, the term "Wayne Circuit cases" is used.

The Court agrees with Dairyland that this action was pending at the time Intensive Case Management filed the Wayne County action. Thus, the Wayne County action is not a prior pending action; it is a subsequent action. While the parties are not identical, complete identity of the parties is not necessary. There is no dispute that the settlement and release entered into in August of 2021 disposed only of those claims accruing on or before July 31, 2021; there was no final order disposing of this case. This case has remained pending since October 22, 2020. The First Amended Complaint merely clarifies the pleadings to narrow the issues to claims accruing on or after August 1, 2021. As reflected in the timeline of events, Mews and Intensive Case Management filed their lawsuit in Wayne County after Dairyland filed its motion for leave to amend and just one day prior to the hearing on that motion. The addition of Intensive Case Management is not dispositive. Most, if not all, of the services at issue were provided by that entity, and Dairyland has sought discovery from Intensive Case Management and Rebecca Mews in this action. The Wayne County action is not a prior pending action.

D. MOTIONS FOR SUMMARY DISPOSITION IN WAYNE CIRCUIT CASES

In lieu of answering the complaints in the Wayne Circuit cases, Dairyland moved for summary disposition under MCR 2.116(C)(6). Dairyland noted that ICM conceded in its summary disposition brief in the Oakland Circuit case that the Oakland Circuit case was pending and was based on the same set of operative facts. Dairyland maintained that ICM's Wayne Circuit case alleged the exact same issues that Mews alleged in his countercomplaint in the Oakland Circuit case. Dairyland maintained that the pleadings in both cases reflected that the parties dispute the number of skilled-nursing care hours Mews requires, the reasonable rates, and whether Mews had provided "reasonable proof" of his claim. Dairyland further argued that no final order had been entered in the Oakland Circuit case and thus it remained pending. Alternatively, Dairyland requested that the ICM Wayne Circuit case be transferred to the Oakland Circuit Court under MCR 2.222.

Dairyland further argued that Diversified agreed that the Oakland Circuit case and the Diversified Wayne Circuit case arose out of the same facts and involved the same issues. Dairyland asserted that the Oakland Circuit case was pending before the Diversified Wayne Circuit case was filed. Dairyland posited that complete identity of the parties is not required under MCR 2.116(C)(6); rather, the two actions "must be based on the same or substantially the same cause of action." Dairyland maintained that Diversified's Wayne Circuit case alleged the exact same issues that Mews alleged in his countercomplaint in the Oakland Circuit case and that the services provided by Dairyland after July 31, 2021 continued to be at issue in the Oakland Circuit case. Dairyland also argued that the purpose of the court rule—to avoid litigious harassment—justified granting the motion in its favor. Alternatively, Dairyland requested a change of venue under MCR 2.222 on the basis that a case involving the same issues was already pending in the Oakland Circuit Court.

In lieu of answering the complaints in the Wayne Circuit cases, the MCCA filed motions to dismiss in both Wayne Circuit cases arguing that it was entitled to summary disposition under MCR 2.116(C)(7) and (8). The MCCA asserted that res judicata and collateral estoppel barred ICM's and Diversified's claims for tortious interference with a business expectancy and ELCRA

claims because they were identical to the claims brought by their privy, Mews, that were dismissed under MCR 2.116(C)(8) in the Oakland Circuit case. The MCCA further argued that ICM and Diversified failed to state claims for tortious interference because the MCCA did not act in a manner that was illegal, unethical, or fraudulent. Finally, the MCCA asserted that ICM and Diversified failed to state claims for any violation of the ELCRA because the MCCA is not a place of public accommodation.

The trial court denied both Dairyland's and the MCCA's motions in both the ICM Wayne Circuit case and the Diversified Wayne Circuit case, without oral argument. In both cases, the court marked "denied" on separate praecipe forms. In the ICM Wayne Circuit case, the order denying Dairyland's motion provided no reasoning, while the order denying the MCCA's motion stated "original case in Wayne County." In the Diversified Wayne Circuit case, the trial court provided no reasoning on either order.

In Docket No. 359855, ICM appeals by leave granted the Oakland Circuit Court's order denying its motion for summary disposition under MCR 2.116(C)(6).[4] In Docket Nos. 361345 and 361348, the MCCA appeals by leave granted the orders denying its motions for summary disposition as to ICM and Diversified's tortious interference and ELCRA violation claims in the Wayne Circuit cases.[5] In Docket No. 361351, Dairyland appeals by leave granted the order denying its motion for summary disposition under MCR 2.116(C)(6) and its alternative request to transfer venue under MCR 2.222 in the ICM Wayne Circuit case.[6] And, in Docket No. 361357, Dairyland appeals by leave granted the order denying its motion for summary disposition under MCR 2.116(C)(6) and its alternative request to transfer venue under MCR 2.222 in the Diversified Wayne Circuit case.[7]

## II. DOCKET NO. 359855

ICM argues that the Oakland Circuit Court erred by denying its motion for summary disposition under MCR 2.116(C)(6) because ICM was not a party to the Oakland Circuit case at the time that the Wayne Circuit case was filed. We agree.[8]

---

[4] *Dairyland Ins Co v Mews*, unpublished order of the Court of Appeals, entered July 18, 2022 (Docket No. 359855).

[5] *Intensive Case Management v Dairyland Ins Co*, unpublished order of the Court of Appeals, entered Sept 23, 2022 (Docket No. 361345) and *Diversified Home Health Care v Dairyland Ins Co*, unpublished order of the Court of Appeals, entered Sept 23, 2022 (Docket No. 361348).

[6] *Intensive Case Management v Dairyland Ins Co*, unpublished order of the Court of Appeals, entered Sept 23, 2022 (Docket No. 361351).

[7] *Diversified Home Health Care v Dairyland Ins Co*, unpublished order of the Court of Appeals, entered Sept 23, 2022 (Docket No. 361357).

[8] "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). In deciding whether

Summary disposition is appropriate when "[a]nother action has been initiated between the same parties involving the same claim." MCR 2.116(C)(6). We have construed this language to mean that "[s]ummary disposition cannot be granted under MCR 2.116(C)(6) unless there is another action between the same parties involving the same claims currently initiated and pending at the time of the decision regarding the motion for summary disposition." *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). MCR 2.116(C)(6) is a "codification of the former plea of abatement by prior action." *Fast Air, Inc*, 235 Mich App at 545. "The plea of abatement protected parties from being harassed by new suits brought by the same plaintiff involving the same questions as those in pending litigation." *Frohriep v Flanagan*, 275 Mich App 456, 464; 739 NW2d 645 (2007), rev'd in part on other grounds 480 Mich 962 (2007).

In this case, it is undisputed that both cases involve the "same claim." ICM argues that the relevant question was not whether there was another pending action involving Mews's claim, but rather which case *between the parties* was the first to be filed. ICM was not a party to Dairyland's original declaratory-judgment action and did not become a party to that case until after ICM filed its Wayne Circuit case. ICM maintains it is entitled to summary disposition under MCR 2.116(C)(6) in the Oakland Circuit case because its Wayne Circuit case involved the same parties and was already pending when Dairyland added ICM as a party to the Oakland Circuit case.

Dairyland disagrees with this conclusion, arguing that the "same parties" language of the court rule does not require the exact same identity of parties, citing *JD Candler Roofing Co, Inc v Dickson*, 149 Mich App 593; 386 NW2d 605 (1986). In *JD Candler Roofing Co*, we considered whether summary disposition was proper under MCR 2.116(C)(6) when the relevant plaintiff and defendant were parties in both actions, but not all the same parties were named in both actions. *Id.* at 595-596. There, the owners of a commercial building sued a roofer for breach of contract. *Id.* Subsequently, the roofer sued only one of the owners on the same issue. *Id.* We concluded that the addition of the owner in one suit, but not the other, did "not alter the essential identity of the parties between the two suits." *Id.* at 599. It was immaterial that the other owner was not a party to the second suit. *Id.* at 598-599.

Michigan Supreme Court jurisprudence supports *JD Candler Roofing Co*'s pronouncement that the term "same parties" in the court rule does not require complete identity as to all parties in each lawsuit; rather, it only requires the moving party and the opposing party to be the same. For example, in *Pinel v Campsell*, 190 Mich 347, 348-350; 157 NW 271 (1916), not all the same defendants were named in the second suit as in the first; but the moving and opposing parties were named in both suits. In addressing the requirement that the "same parties" be part of both suits to justify a plea of abatement, the Court stated:

---

summary disposition under MCR 2.116(C)(6) is appropriate, a court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). The interpretation and application of court rules is also reviewed de novo. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022). "When ascertaining the meaning of a court rule, the reviewing court should focus first on the plain language of the rule in question, and when the language of the rule is unambiguous, it must be enforced as written." *Id.* (cleaned up).

The positions of the respective parties on the record in the two suits, whether plaintiffs or defendants, is not material, if full relief can be had in the one first commenced. And if there were other parties in the first suit not included in the subsequent one, it would not necessarily prevent the pendency of the former action from being a defense to the latter, nor would the fact that the parties, plaintiff and defendant, were reversed in the two suits prevent the defense, if the issue in the two were the same, and the same relief attainable. [*Pinel*, 190 Mich at 352 (cleaned up).]

Accordingly, the *Pinel* Court held that the second case should have been abated. *Id*. at 353.

Relying on *Pinel*, the Supreme Court held that dismissal was proper under the statute then-codifying the plea of abatement in *Chapple v Nat'l Hardwood Co*, 234 Mich 296, 296-298; 207 NW 888 (1926). In *Chapple*, the second action retained the plaintiff and a defendant from the first suit, but also "add[ed] new defendants [and] subtract[ed] some of the old ones[.]" *Id*. at 298). The Court quoted the following guidance from a treatise:

But a suit will be abated on the ground that another suit is pending in the same jurisdiction where the parties plaintiff are the same in both suits and the parties defendant in the second suit are parties defendant in the former suit, notwithstanding that there are additional parties defendant in the former suit, provided, of course, each action is predicated upon substantially the same facts as respects the defendants named in both. [*Id.* at 298-299, quoting 1 Ruling Case Law, p 15.]

Thus, under well-established Michigan jurisprudence, the "same parties" language of MCR 2.116(C)(6) requires that relevant parties, i.e., the moving and opposing party, be the exact same in both actions. Because the Supreme Court conditioned MCR 2.116(C)(6)'s applicability on the other action involving the same parties in addition to the same claim, we must enforce the rule's plain and unambiguous language as written. *Micheli*, 340 Mich App at 367. The rule that complete identity of the parties is not required is only triggered when one or both actions name an additional party not found in the other action, or when the parties' respective positions as a defendant or a plaintiff are reversed in the subsequent action. See *Chapple*, 234 Mich at 298-299; *Pinel*, 190 Mich at 352; *J D Candler Roofing Co*, 149 Mich App at 598-600. That is not the case here.

We also reject Dairyland's argument that ICM was a "party" for purposes of MCR 2.116(C)(6) merely because ICM had an interest that would be affected by the Oakland Circuit case and participated in discovery. At the time that the complaint in the ICM Wayne Circuit case was filed, ICM had no right to control the Oakland Circuit case proceedings or make a defense in that case, or appeal from an adverse judgment. Under the plain meaning of the term "parties" in the court rule, ICM was not a party to the Oakland Circuit case until after the amended complaint was filed.

Finally, Dairyland argues that because no final order had been entered in the Oakland Circuit case, the Oakland Circuit case is the prior and pending action, while the ICM Wayne Circuit case is the subsequently filed matter. This interpretation is contrary to the plain language of the court rule. The court rule clearly specifies that the prior pending action must involve not only "the

same claim," but also "the same parties," as the subsequent action. Dairyland's interpretations would nullify or render the term "same parties" mere surplusage. See *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019) ("[A]n interpretation that would render any part of the statute surplusage or nugatory must be avoided.").[9] Accordingly, we find that the trial court erred by denying ICM's motion for summary disposition under MCR 2.116(C)(6) in the Oakland Circuit case.

## III. DOCKET NOS. 361351 & 361357

Dairyland argues that the trial court erred by denying its motions for summary disposition under MCR 2.116(C)(6) in the Wayne Circuit cases. Alternatively, it asserts that the court abused its discretion by denying its request to transfer venue under MCR 2.222. We disagree.[10]

As discussed in Docket No. 359855, the ICM Wayne Circuit case was the first case between Dairyland and ICM. Although the Oakland Circuit case was filed before the ICM Wayne Circuit case, ICM did not become a party to the Oakland Circuit case until *after* the ICM Wayne Circuit case was filed. The fact that ICM was central to Dairyland's request for declaratory relief in the Oakland Circuit case, participated extensively in discovery, and would be affected by the outcome, does not make it a "party" to the original action as that term is used in the court rule. MCR 2.116(C)(6) does not merely require that a prior pending action exists involving the same claims; it unambiguously requires that "another action has been initiated *between the same parties* involving the same claim." (Emphasis added). There was no pending case between ICM and Dairyland at the time that the ICM Wayne Circuit case was filed. And there is no dispute that both cases would require adjudication of the same issues. Accordingly, the trial court did not err by denying Dairyland's motion for summary disposition under MCR 2.116(C)(6) in the ICM Wayne Circuit case.

The trial court also did not err by denying Dairyland's motion for summary disposition under MCR 2.116(C)(6) in the Diversified Wayne Circuit case. Diversified was never a party to the Oakland Circuit case, which Dairyland admits. The Diversified Wayne Circuit case was the

---

[9] Dairyland cites no authority to support its argument that an amended complaint adding a party relates-back to the filing of the original complaint, such that the added party is considered part of the originally filed lawsuit for purposes of applying MCR 2.116(C)(6). We consider this argument abandoned. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

[10] We review a trial court's decision on motion for change of venue under MCR 2.222 for an abuse of discretion. *Chilingirian v City of Fraser*, 182 Mich App 163, 165; 451 NW2d 541 (1989). Under the abuse of discretion standard, there is no single correct outcome; rather, an abuse of discretion occurs when a circuit court chooses an outcome outside the range of "reasonable and principled outcome[s]." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (cleaned up).

first and only suit between Diversified and Dairyland. But Dairyland asserts that summary disposition is proper because the Oakland Circuit case involves "substantially the same parties" as the Diversified Wayne Circuit case. Dairyland argues that Mews's care providers have been central to the Oakland Circuit case and claims that Diversified would be impacted by any resolution in the Oakland Circuit case. The fact that Diversified may be impacted by the outcome of the Oakland Circuit case does not transform Diversified into a "party" for purposes of the court rule. As explained, the caselaw allowing for "substantially the same parties" refers to situations not present in this case. We find that the trial court did not err by denying Dairyland's motion for summary disposition under MCR 2.116(C)(6) in the Diversified Wayne Circuit case.

Alternatively, Dairyland argues that the trial court erred by denying its request for change of venue under MCR 2.222 in the Wayne Circuit Court cases. MCR 2.222 provides:

> The court may order a change of venue of a civil action, or of an appeal from an order or decision of a state board, commission, or agency authorized to promulgate rules or regulations, *for the convenience of parties and witnesses or when an impartial trial cannot be had where the action is pending*. In the case of appellate review of administrative proceedings, venue may also be changed for the convenience of the attorneys. [(emphasis added).]

"[T]he moving party has the burden of demonstrating inconvenience or prejudice, and a persuasive showing must be made." *Chilingirian v City of Fraser*, 182 Mich App 163, 165; 451 NW2d 541 (1989). "Furthermore, plaintiff's initial choice of venue is to be accorded deference." *Id.*

Our appellate courts have considered traveling distances, the location of the parties and witnesses, and the location of the evidence, with respect to convenience of the parties and witnesses. See *Gross v Gen Motors Corp*, 448 Mich 147, 155; 528 NW2d 707 (1995) (recognizing that venue rules are intended to ensure that litigation occurs in the most convenient forum and convenience is evaluated "in terms of the interests of the parties and any relevant witnesses"). For example, this Court concluded that a circuit court abused its discretion by granting a motion to change venue when "[t]he inconvenience caused by travel between two adjoining counties does not constitute a 'persuasive showing' of inconvenience or prejudice which would justify a change of venue." *Chilingirian*, 182 Mich App at 165. In another case, this Court concluded that the circuit court did not abuse its discretion by granting a motion to change venue when a far greater number of witnesses would be inconvenienced if trial were held in Wayne County than if the case were transferred to Tuscola County. *Kohn v Ford Motor Co*, 151 Mich App 300, 304-306; 390 NW2d 709 (1986). Likewise, this Court concluded that change of venue for the parties' convenience was proper when the "[d]efendants met their burden of making a persuasive showing of inconvenience by demonstrating that the alleged discrimination occurred in Lenawee County and that the plaintiff, the witnesses and the relevant records were located in Lenawee County." *Hickman v Gen Motors Corp*, 177 Mich App 246, 251-52; 441 NW2d 430 (1989).

In this case, Dairyland claims that it would be inconvenient and burdensome to duplicate the significant discovery and extensive motion practice in the Wayne Circuit cases that has already occurred in the Oakland Circuit case. Dairyland, however, did not raise this argument in the trial court; it simply argued that a pending case already existed, which justified the change of venue. Under these circumstances, it was not an abuse of discretion to conclude that Dairyland failed to

-12-

meet its burden of making a persuasive showing of inconvenience or prejudice. Because the Wayne Circuit cases will consider Mews's entitlement to PIP benefits from August 1, 2021, forward, any additional discovery will not be duplicative of that already conducted in the Oakland Circuit case that addressed benefits incurred up to July 31, 2021. Moreover, because we conclude that ICM is entitled to summary disposition under MCR 2.116(C)(6) in the Oakland Circuit case, there will be no dual track litigation. Accordingly, the court did not abuse its discretion by denying Dairyland's to transfer venue in the Wayne Circuit cases.

## IV. DOCKET NOS. 361345 AND 361348

The MCCA argues that the trial court erred by denying its motions for summary disposition under MCR 2.116(C)(7) and (8) as to ICM and Diversified's tortious interference and ELCRA violation claims in the Wayne Circuit cases. We agree that the MCCA was entitled to summary disposition under MCR 2.116(C)(8) in the Wayne Circuit cases.[11]

ICM and Diversified concede that their complaints do not state a cause of action for tortious business interference given this Court's decision in *Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, ___ Mich App ___ ; ___NW2d___ (2022) (Docket No. 355372). Accordingly, we conclude that the trial court erred by denying the MCCA's motion for summary disposition under MCR 2.116(C)(8) with respect to the tortious interference with a business expectancy claims.

We further conclude that the ELCRA does not apply to the MCCA because the MCCA is not a "public accommodation." To state a claim under MCL 37.2302(1), a plaintiff must establish "(1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation." *Moon v Mich Reproductive & IVF Ctr, PC*, 294 Mich App 582, 593; 810 NW2d 919 (2011), quoting *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). Under the ELCRA, "place of public accommodation" is defined as "a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a). Specifically exempt from the ELCRA is an "establishment not in fact open to the public[.]" MCL 37.2303.

The MCCA is an unincorporated, nonprofit association, the purpose of which is to reimburse or indemnify member insurers for PIP losses they incur in excess of "catastrophic" levels. MCL 500.3104(1) and (2). The primary purpose in creating the MCCA was to "protect smaller insurers from the potentially severe financial repercussions of the no-fault act." *League Gen Ins Co*, 435 Mich at 350. In view of this purpose, the Supreme Court has rejected the

---

[11] "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

contention that the MCCA is a state agency with a public function; rather, the Court has deemed the MCCA to serve a private benefit, as opposed to a public one. *Id*. at 350-351.

Given that the MCCA is an association of member insurers that serves a private benefit, it cannot be said the MCCA fits within the definition of "public accommodation" under the ELCRA. Indeed, by definition, the MCCA does not provide or make available services or privileges to members of the public; rather, it solely provides reimbursement to member insurers for catastrophic claims. That the MCCA's mission may have an incidental public benefit does not bring it within the definition of "public accommodation" for purposes of the ELCRA. Accordingly, we conclude that ICM and Diversified failed to state a claim that the MCCA violated the ELCRA and thus the trial court erred by denying the MCCA's motion for summary disposition under MCR 2.116(C)(8).[12]

## V. CONCLUSION

Docket Nos. 361351 and 361357 are affirmed. Docket Nos. 359855, 351345, and 361348 are reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick

---

[12] Because we conclude that the MCCA was entitled to summary disposition under MCR 2.116(C)(8), it is not necessary for us to address whether res judicata or collateral estoppel barred ICM's and Diversified's tortious interference with a business expectancy and ELCRA claims.